IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>BILLY D. THORNE,<br>Defendant. | No. CR13-3052<br>REPORT AND RECOMMENDATION |

On the 27th day of February 2014, this matter came on for hearing on the Motion to Suppress Statement and Evidence (docket number 24), filed by the Defendant on February 18, 2014. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. Defendant Billy D. Thorne appeared in person and was represented by his attorney, Terence McAtee.

## I. PROCEDURAL HISTORY

On December 4, 2013, Defendant Billy D. Thorne was charged by Indictment with possession of a firearm by a felon. Defendant appeared on December 11, 2013 and entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on February 10, 2014. The trial was subsequently continued to April 7, 2014 at Defendant's request.

On February 18, 2014, Defendant timely filed the instant motion to suppress. The Government filed its resistance on February 25, 2014.

## II. RELEVANT FACTS

On July 25, 2012, Defendant's son (Billy Matthew Thorne) and his son's girlfriend (Sara Skattebo) met with Officer Hall at the Ankeny Police Department, reporting that they were being harassed by Defendant. Based on the allegations, Defendant was charged in state court with harassment and a warrant was issued for his arrest. Defendant was arrested later that day in Mason City and was detained in the Cerro Gordo County Jail.

On the following day, July 26, Detective Daniel Vallejo of the Ankeny Police Department was instructed to transport Defendant from Mason City to the Polk County jail. Vallejo and another officer drove to Mason City and took Defendant back to Des Moines.

The next day, July 27, the case was assigned to Detective Vallejo for "follow-up." Vallejo read Officer Hall's police report and learned that Defendant's son and Skattebo had turned over a rifle which they said belonged to Defendant. In reading the report, including Skattebo's written statement, Vallejo also learned that Defendant had allegedly threatened to tie up Skattebo in the basement. According to Skattebo's statement, there were pictures on Defendant's phone of her being tied up. At that point, Vallejo decided to go to the Polk County jail, together with Detective Lampe, and obtain Defendant's consent to search his phone.[1]

Detective Vallejo could not recall what time he went to the jail on July 27, and "could not say for 100% sure" whether it was morning or afternoon. Vallejo testified that he did not know whether Defendant had an initial appearance in state court prior to meeting with Vallejo, nor did he know whether an attorney had been appointed to represent Defendant at that time. Vallejo and Detective Lampe met with Defendant in the "datamaster room," which is apparently used by officers to process drunk drivers. The room, which Vallejo estimated to be 12 feet by 15 feet, contained desks and chairs. Defendant was seated at one of the chairs and the door to the room was closed.

According to Detective Vallejo, he had no intention of interrogating Defendant that day and, therefore, did not give him a *Miranda* warning. Vallejo testified that his intention that day "was purely just to get consent to search his phone." Vallejo advised Defendant that he intended to hook the phone up to a computer and download all the information on

---

[1] The police obtained Defendant's phone when Defendant was arrested in Mason City. The phone was transported to Des Moines along with Defendant and other property in his possession at that time.

2

the phone. Defendant was presented with a written consent to search (Government's Exhibit 1), which he signed. The written consent to search states, in part, as follows:

> I, <u>Billy D. Thorne</u> have been informed of my constitutional right not to have a search made of the electronic device identified below owned by me and/or under my care without a search warrant. However, knowing my rights to refuse consent to a search, I hereby authorize <u>Detective Vallejo</u> and <u>Detective Lampe</u> of the Ankeny Police Department to have a complete search of my electronic device conducted on their behalf [and], if necessary, conduct a forensic examination of the associated item described below.

Detective Vallejo could not recall whether he read the consent to search form to Defendant prior to Defendant signing it. Vallejo could not recall whether Defendant asked him any questions regarding the form. Vallejo could not recall whether Defendant was told about a possible felon in possession of a firearm charge. Vallejo could not recall whether Defendant was told that evidence obtained from the phone could be used against him in a criminal case. Vallejo could not recall whether Defendant was verbally told that he had a right to refuse consent.

When Defendant's son and Skattebo met with Officer Hall on July 25, they advised him that Defendant has a history of mental illness. Skattebo testified that Defendant has been diagnosed in the past with "bipolar disorder, possibly multiple personalities, and schizophrenia." According to Skattebo, she took Defendant to the mental health center in Mason City earlier in July, and he was prescribed Seroquel. Skattebo opined, however, that Defendant did not take his medications regularly. References to Defendant's mental health issues were included in Officer Hall's report, but Detective Vallejo testified that he could not recall "if that would have stuck out in my mind when I was talking with him."

According to Detective Vallejo, there was no indication when meeting with Defendant that he was not competent to give consent to search his phone. Vallejo described Defendant's demeanor as "possibly a bit upset, just about the whole situation."

3

Vallejo testified, however, that there was nothing in Defendant's appearance or demeanor which led him to believe Defendant was not competent. Vallejo could not recall any difficulties which Defendant had in communicating with him. According to Vallejo, Defendant did not appear impaired in any way. Vallejo did not observe anything in Defendant's behavior that led him to believe that he was suffering from a mental disorder.[2]

Defendant was 55 years old at the time of these events on July 27, 2012. Defendant has a lengthy criminal record. Special Agent Dee O. Loper of the Bureau of Alcohol Tobacco Firearms and Explosives testified that Defendant's criminal history began 40 years ago, when he was convicted of burglary in Georgia. Defendant has been arrested in six states and has convictions for prostitution, assault, escape, and receiving stolen property. In March 1997, Defendant was arrested and subsequently convicted in Florida of five counts of burglary of a dwelling and one count of armed burglary. He was sentenced to more than 16 years in prison and was released in 2011 or 2012.

## III. DISCUSSION

The sole issue raised by Defendant is whether his consent to search was voluntary.[3] The applicable law in this regard is well-established. The Fourth Amendment protects persons and their property against unreasonable searches and seizures. A warrantless search is presumptively unreasonable. *United States v. Castaneda*, 438 F.3d 891, 893 (8th Cir. 2006). However, a voluntary consent to search is a valid exception to the warrant

---

[2] According to Detective Vallejo, all proceedings held in the datamaster room are recorded. Due to the passage of time, however, the video record of July 27, 2012 has been destroyed.

[3] In his motion to suppress, Defendant also asserts that officers violated his Fifth Amendment right against self-incrimination when he was being transported in custody from Mason City to Cedar Rapids on December 11, 2013. Counsel for the Government advised the Court, however, that the Government does not intend to offer any evidence regarding statements made by Defendant while being transported on that date. Accordingly, the parties agree that the first issue raised in Defendant's motion to suppress is moot.

requirement. *United States v. Guzman*, 507 F.3d 681, 687 (8th Cir. 2007). "A consent is voluntary if the consenting individual had 'a reasonable appreciation of the nature and significance of his actions.'" *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007) (quoting *United States v. Rambo*, 789 F.2d 1289, 1297 (8th Cir. 1986)). Stated otherwise, Defendant's consent was voluntary "if it was the product of essentially free and unconstrained choice, rather than the product of duress or coercion, express or implied." *United States v. Morreno*, 373 F.3d 905, 910 (8th Cir. 2004). The Court must view the totality of the circumstances and determine whether the "pressures exerted upon the suspect have overborne his will." *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989). The Government has the burden of proving by a preponderance of the evidence that the consent to search was knowing and voluntary. *United States v. Farnell*, 701 F.3d 256, 262-63 (8th Cir. 2012).

To determine whether consent was voluntary, the Court must look at the totality of the circumstances, including both the characteristics of the consenting party and the environment surrounding the consent. *United States v. Arreola*, 250 Fed. Appx. 765, 767 (8th Cir. 2007). These factors include:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] *Miranda* rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

5

*United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010) (quoting *United States v. Arciniega*, 569 F.3d 394, 398 (8th Cir. 2009)). These factors should not be applied mechanically, but are to be used instead as a guide to the Court's analysis. *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

Turning to the facts in the instant action, I will first consider the "characteristics of the consenting party." Defendant was 55 years old in July 2012 when consent was given to search his phone. The record is silent regarding his formal education, but he is apparently of at least average intelligence. Defendant had been in custody for approximately two days, and there is no evidence he was intoxicated or under the influence of any controlled substances when consent was given on July 27. Defendant was not informed of his *Miranda* rights, but was presumably aware of "the protections that the legal system provides for suspected criminals," due to his extensive prior criminal history. Defendant has been arrested numerous times in at least six states and has served a substantial period of time in prison. It is unlikely that he was intimidated by the mere presence of Detectives Vallejo and Lampe, or otherwise felt compelled to acquiesce to their request to search his phone. *United States v. Rambo*, 789 F.2d 1289, 1297 (8th Cir. 1986) (finding consent to search was given voluntarily by a person in custody who "was not cowed by authority").

Turning to "the environment surrounding the consent," I find no aggravating circumstances. The discussion between Defendant and the detectives lasted only five or ten minutes. Consent was given while Defendant was in custody and alone in a closed room with two detectives, but there is no evidence that Detective Vallejo "used threats, physical intimidation, or punishment to extract consent." Similarly, Vallejo made no promises or misrepresentations.

In arguing that his consent to search was not voluntary, Defendant relies almost exclusively on the fact that he has "been diagnosed with multiple mental disorders." There is no evidence, however, that Defendant was not able to understand the nature and

significance of his actions when consent was given. Detective Vallejo credibly testified that nothing in Defendant's appearance, demeanor, or responses suggested he was suffering from a mental disorder. According to Vallejo, Defendant had no difficulty communicating with him and did not appear impaired in any way. "Although mental condition is relevant to a suspect's susceptibility to police coercion, coercive police activity is a necessary predicate to a finding that a confession was not voluntary within the meaning of the due process clause." *United States v. Galceran*, 301 F.3d 927, 931 (8th Cir. 2002). The record here lacks any evidence of "coercive police activity."

In summary, I believe the totality of the circumstances establishes that Defendant's consent to search his phone was knowing and voluntary. There is no evidence that the "pressures exerted upon" Defendant caused his will to be "overborne." *Jorgensen*, 871 F.2d at 729. Defendant, who is an experienced criminal, met briefly with two detectives while they asked for consent to search his phone. Defendant then signed a written consent form, which acknowledged his right "to refuse consent to a search." While Detective Vallejo could not recall whether Defendant was verbally told that he had a right to refuse consent, such a verbal warning was not required. *United States v. Zamora-Coronel*, 231 F.3d 466, 470 (8th Cir. 2000) ("Whether an officer [informs a suspect of his right to refuse consent] constitutes 'a significant, but not determinative, factor' in determining voluntariness.") (quoting *Chaidez*, 906 F.2d at 381-82)). No *Miranda* warning was given, but none was required. *Saenz*, 474 F.3d at 1137 ("We have not required an officer to provide *Miranda* warnings before requesting consent to search or held that an absence of *Miranda* warnings would make an otherwise voluntary consent involuntary."). Defendant's reliance on his history of mental illness falls short. There is simply no evidence that Defendant was impaired or unable to appreciate the nature and significance of his consent to search the phone. *Id.* at 1136.

## IV. REPORT AND RECOMMENDATION

For the reasons set forth above, I respectfully recommend that Defendant's Motion to Suppress Statement and Evidence (docket number 24) be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on February 27, 2014.*

DATED this 3rd day of March, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA